UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -:
TIMOTHY McCORMACK,                 :   03 Civ. 6597 (JCF)
                                   :
          Plaintiff,               :   OPINION
                                   :   AND ORDER
                                   :
     - against -                   :
                                   :
                                   :
THE LONG ISLAND RAIL ROAD COMPANY, :
                                   :
          Defendant.               :
- - - - - - - - - - - - - - - - - -:
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

  Timothy McCormack brings this employment discrimination action against the Long Island Rail Road Company (the "LIRR"), alleging that the LIRR discriminated against him in violation of the Americans with Disabilities Act (the "ADA"), 42 U.S.C. §§ 12101 et seq. The parties consented to my exercise of authority for all purposes including determination of dispositive motions under 28 U.S.C. § 636(c). The LIRR has now moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons explained below, the motion is granted in part and denied in part.

Background

  The plaintiff alleges that he suffers from chronic alcoholism and epilepsy. He developed chronic alcoholism in the late 1980's or early 1990's and began experiencing seizures in the early 1990's. (Letter of Lawrence W. Shields, M.D., dated Feb. 26, 2002 ("Shields Letter"), attached as Exh. XII to Affirmation of Fredric N. Gold dated Sept. 16, 2005 ("Gold Aff.")). It is undetermined the extent to which the seizures are alcohol-related or caused by

a neurological condition. (Deposition of Timothy McCormack dated May 25, 2005 ("Pl. Dep."), attached as Exh. A to Affirmation of Priscilla Lundin dated July 15, 2005 ("Lundin Aff."), at 23, 91, 104; Gold Aff., Exh. II (alcohol-related seizures); Gold Aff., Exh. V (diagnosis of chronic alcoholism after seizure); Shields Letter (cause of seizures unclear); Letter of Dr. James M. Tremaroli dated Nov. 29, 2001 ("Tremaroli Letter"), attached as Exh. E to Lundin Aff. ("mixed seizure disorder[,] ethanol related and unspecified mechanism")). Although the plaintiff is generally able to care for himself (Pl. Dep. at 6, 7), he and his 14-year-old daughter reside with his parents. (Pl. Dep. at 6).

The plaintiff currently takes medications including Dilantin, Effexor, and Remeron. (Pl. Dep. at 23-24.) There is conflicting evidence regarding his compliance with his doctor's instructions (Statement of Material Facts Not in Dispute ("Def. 56.1 Statement"), ¶ 5), and how frequently, if at all, the seizures occur when he does takes his medication as directed. (Compare Lundin Aff., Exh. O (describing seizure at work on September 19, 2003) with Pl. Dep. at 23 (plaintiff does not experience seizures if he avoids alcohol, and there is "nothing wrong with [him]" when he is medicated); Pl. Dep. at 30, 32 (no seizures since October 2001; seizures are well-controlled with medication); Reasonable Accommodation Request Form dated July 9, 2002, attached as Exh. VII to Gold. Aff. ("Epilepsy - 100% in control with non-narcotic medications since 10/29/01."); and Tremaroli Letter (seizure caused by discontinuation of medication)).

2

The LIRR employed the plaintiff as a Track Worker from 1985 to approximately 2001. (Def. 56.1 Statement, ¶¶ 1-2). The Track Worker job description provides in part:

> Working conditions: Working in the Vicinity of the third rail, 700 VCD and train traffic. Position requires duties to be performed outdoors, in all weather conditions. Varying work environments and potential hazardous conditions, including, but not limited, to the following conditions: dirty, dusty, noisy, adequate lighting and ventilation, vibration, mechanical hazards, moving objects, transporters, elevated places, exposure to electrical hazards, toxic conditions. Employees may be required to work alone or with others.

(Def. 56.1 Statement, ¶ 3) (emphasis omitted).

At approximately 11:40 p.m. on October 29, 2001, the plaintiff lost consciousness while at work. (Def. 56.1 Statement, ¶ 6). The defendant alleges that the plaintiff experienced a seizure at that time, a characterization denied by the plaintiff but accepted by his attorney. (Def. 56.1 Statement, ¶¶ 6-7; Pl. Dep. at 77-78, 104-05; Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment ("Pl. Memo.") at 3; Gold Aff., ¶ 6; Lundin Aff., Exh. O). After Mr. McCormack regained consciousness, the Track Foreman, Gerry Lynaugh, instructed him to cease working and go home, which Mr. McCormack did. (Pl. Dep. at 77, 78). On October 30, 2001, the plaintiff reported to the LIRR Medical Facility to discuss the events of the previous evening. (Deposition of Sal Maieli dated June 14, 2005 ("Maieli 6/14/05 Dep."), attached as Exh. C to Lundin Aff., at 11-12).

On January 11, 2002, Sal Maieli, the LIRR's Occupational Health Services Manager, informed Mr. McCormack by letter that the

3

LIRR considered him "permanently unable to perform the duties of [his] craft" and "medically disqualified [from his position] as Trackworker."  (Letter of Sal Maieli dated Jan. 11, 2002 ("Maieli 1/11/02 Letter"), attached as Exh. VI to Gold Aff.).  The letter stated that Mr. Maieli informed Sharon Falloon, the LIRR's Manager-Employment, of Mr. McCormack's situation, and suggested that Mr. McCormack contact Ms. Falloon to discuss "possible future employment opportunities with the LIRR."  (Maieli 1/11/02 Letter). The defendant alleges that the LIRR subsequently attempted to locate a vacant position to which it could reassign Mr. McCormack, given his medical limitations. (Def. 56.1 Statement, ¶ 11; Maieli 6/14/05 Dep. at 18-29; Letter of Sal Maieli dated April 24, 2002 ("Maieli 4/24/02 Letter"), attached as Exh. XVI to Gold Aff.).

Approximately six months later, Mr. McCormack had not been assigned to a vacant position, and on July 9, 2002, he submitted to the LIRR a Reasonable Accommodation Request Form ("Reasonable Accommodation Request").  (Gold Aff., Exh. VII at 1).[1]  He described his disability as "epilepsy - 100% in control with non-narcotic medication since 10/29/01," adding that under New York State law he would be recognized as free from disability starting on October 30, 2002.  (Gold Aff., Exh. VII at 2).  With respect to the "accommodation requested," he requested a track department position, a position in a department with similar requirements, or

---

[1] The LIRR asked Mr. McCormack to file the form a second time because, according to the LIRR, he failed to specify an accommodation on the first one.  Mr. McCormack's second submission was essentially identical to the first. (Gold Aff., Exh. VII at 1-2).

4

any other position. (Gold Aff., Exh. VII at 2).

On September 6, 2002, the LIRR formally denied the plaintiff's Reasonable Accommodation Request. (Def. 56.1 Statement, ¶ 16). On September 27, the plaintiff filed charges with the United States Equal Employment Opportunity Commission (the "EEOC"), and on June 10, 2003, the EEOC issued a "right to sue" letter. (Def. 56.1 Statement, ¶¶ 17, 24).

Mr. McCormack did not occupy a position with, nor was he compensated by, the LIRR from January 11, 2002, until June 2, 2003 (Def. 56.1 Statement, ¶¶ 10-11, 20; Maieli 6/14/05 Dep. at 26-29; Pl. Dep. at 98), although both parties describe his employment as continuous from 1985 through the present (Def. 56.1 Statement, ¶ 1; but see Compl., ¶ 18 (employment terminated and plaintiff later reinstated)). On May 20, 2003, the LIRR offered Mr. McCormack a position as an Oiler/Laborer, with restrictions. (Gold Aff., Exh. IX). The plaintiff asserts that the offer was later rescinded, but no evidence supports this allegation. (Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment ("Pl. Memo.") at 5).

On June 2, 2003, the LIRR offered Mr. McCormack a position as a Car Appearance Maintainer ("CAM"), with restrictions, which he accepted, and he has continued to be employed in that capacity to date. (Def. 56.1 Statement, ¶¶ 20-21; Gold Aff., Exh. X). Mr. McCormack's employment as a CAM is subject to the following restrictions: no work around tracks or live third rail; no climbing on equipment; and no working alone. (Def. 56.1 Statement, ¶ 20).

5

As a CAM, the plaintiff cleans trains parked at station platforms. (Def. 56.1 Statement, ¶ 21).

Discussion

    A. <u>Summary Judgment Standard</u>

A motion for summary may be granted only where there is "no genuine issue as to any material fact and [] the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see <u>Colotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). The role of the court is not to "make credibility determinations or weigh the evidence." <u>Peck v. Baldwinsville Central School District</u>, 426 F.3d 617, 625 (2d Cir. 2005) (citing <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986)). The court must resolve all ambiguities and draw all permissible factual inferences in favor of the non-movant. <u>Konits v. Valley Stream Central High School District</u>, 394 F.3d 121, 124 (2d Cir. 2005). However, the plaintiff "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible." <u>Goenaga v. March of Dimes Birth Defects Foundation</u>, 51 F.3d 14, 18 (2d Cir. 1995). If the non-movant "fails to make a showing sufficient to establish the existence of an element essential to [its] case, and on which the party will bear the burden of proof at trial," summary judgment must be granted. <u>Celotex</u>, 477 U.S. at 322.

    B. <u>Prima Facie Case Under the ADA</u>

Title I of the ADA, 42 U.S.C. §§ 12101-12213, prohibits discrimination against persons with disabilities in the terms,

conditions, and privileges of employment. 42 U.S.C. § 12112(a). To establish his prima facie case under the ADA, the plaintiff must prove by a preponderance of the evidence that (1) his employer is subject to the ADA; (2) he is an employee with a disability under the ADA; (3) he is qualified to perform the essential functions of his job, with or without a reasonable accommodation; and (4) he suffered an adverse employment action because of his disability. See, e.g., Capobianco v. City of New York, 422 F.3d 47, 56 (2d Cir. 2005). An employer's failure to provide a reasonable accommodation may constitute an adverse action under the ADA, 42 U.S.C. § 12112(b)(5)(A), and the required accommodation might include "job restructuring" or "reassignment to a vacant position." 42 U.S.C. § 12111(9)(B). The crux of the defendant's argument is that the plaintiff is not disabled.

An individual may qualify as an employee with a disability on the basis that: (1) he "has a disability" under 42 U.S.C. § 12102(2)(A); (2) he "has a record of a disability" under 42 U.S.C. §§ 12102(2)(B); or (3) he is "regarded as" having a disability under 42 U.S.C. § 12102(2)(C). The plaintiff sets forth claims under all three provisions. He alleges that his alcoholism and epilepsy are substantially limiting impairments and that he has an extensive history of these conditions, as a consequence of which the railroad removed him from his position as Track Worker, failed to reinstate him, and failed to place him promptly in a different job. In the alternative, the plaintiff asserts that he suffers from impairments that do not substantially limit any of his major

life activities but that the LIRR regards the impairments as substantially limiting his ability to work, and, on that basis, took the actions that were adverse to him. The plaintiff maintains that, as a result of the defendant's conduct, he lost wages, benefits, and employment opportunities, including promotions.

C. Limitations on the Plaintiff's Ability to Work

1. Existence of a Disability

Mr. McCormack alleges that he is disabled under the ADA because he "has" a disability within the meaning of 42 U.S.C. § 12102(2)(A). To establish a disability within this provision of the ADA, a plaintiff must demonstrate that (1) he suffers from a mental or physical impairment; (2) the impairment limits one or more major life activities; and (3) that limitation is substantial. Bragdon v. Abbott, 524 U.S. 624, 631 (1998); Colwell v. Suffolk County Police Department, 158 F.3d 635, 641 (2d Cir. 1998). The third step is generally the most hotly contested, and this case is no exception.

Mr. McCormack has submitted documentation indicating that he suffers from two conditions, epilepsy and alcoholism. (Gold Aff., Exh. V; Shields Letter at 3; Tremaroli Letter). The record reflects that the cause of his seizures may be alcoholism or some other factor. (Pl. Dep. at 23, 91, 104; Gold Aff., Exh. II (alcohol-related seizures); Gold Aff., Exh. V (diagnosis of chronic alcoholism after seizure); Shields Letter (cause of seizures unclear); Tremaroli Letter ("mixed seizure disorder[,] ethanol related and unspecified mechanism"). Epilepsy and alcoholism each

8

qualify as an impairment for purposes of the ADA. See Regional Economic Community Action Program, Inc. v. City of Middletown, 294 F.3d 35, 46 (2d Cir. 2004) ("RECAP") (alcoholism); Lovejoy-Wilson v. NOCO Motor Fuel, Inc., 263 F.3d 208, 216 (2d Cir. 2001) (epilepsy).

The LIRR concedes that Mr. McCormack has an impairment[2] but argues that it does not substantially limit any of his major life activities. The EEOC regulations define "substantially limited" as follows:

> (I) Unable to perform a major life activity that the average person in the general population can perform; or
>
> (ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j).

The plaintiff alleges that he is substantially limited in the major life activity of working. The EEOC lists "working" as a major life activity, 29 C.F.R. § 1630.2(I), and, although the Supreme Court has expressed some criticism of this concept, see Sutton v. United Air Lines, Inc., 527 U.S. 471, 492 (1999) (noting

---

[2] Whether the seizures are caused by the impairment of alcoholism or by some other factor is a medical question that need not be answered at the summary judgment phase. The record contains evidence that Mr. McCormack suffers from epilepsy and alcoholism, that each may cause him to experience seizures, and that those seizures interfere with his ability to work. The focus of the present inquiry is whether the plaintiff has made a sufficient showing that he is substantially limited in his ability to work.

9

conceptual difficulty and citing earlier EEOC regulations indicating that a determination as to whether an individual is substantially limited in working should be made only if the individual is not substantially limited in any other major life activity) (citing 29 C.F.R. § 1630.2(j)(1998)), the Second Circuit has accepted it. See, e.g., Bartlett v. New York State Board of Law Examiners, 226 F.3d 69, 80 (2d Cir. 2000) (holding that working is a major life activity) (citing EEOC v. R.J. Gallagher Co., 181 F.3d 645, 654-55 (5th Cir. 1999)).

"To be substantially limited in the major life activity of working, [] one must be precluded from more than one type of job, a specialized job, or a particular job of choice." Sutton 527 U.S. at 492; see 29 C.F.R. § 1630.2(j)(3)(i)("inability to perform a single, particular job does not constitute a substantial limitation on the major life activity of working"). A substantial limitation on the major life activity of working requires "significant[] restrict[ions] in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." 29 C.F.R. § 1630.2(j)(3)(i). To assess such restrictions, courts may consider factors including:

> The job from which the individual has been disqualified because of an impairment, and the number and types of jobs utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (class of jobs); and/or
>
> [] The job from which the individual has been disqualified

because of an impairment, and the number and types of other jobs not utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (broad range of jobs in various classes).

29 C.F.R. § 1630.2(j)(3)(ii).[3] The record suggests that Mr. McCormack has been disqualified from both a class of jobs and a broad range of jobs in various classes.

To assess limitations in a class of jobs, "[w]e begin by identifying [the plaintiff's] pertinent 'training, knowledge, skills or abilities,' and then we compare the jobs utilizing those qualifications with the jobs from which [the plaintiff] is excluded and ask whether exclusion from the latter is a significant restriction with respect to the former." Bartlett, 226 F.3d at 83. Mr. McCormack has a high school education, and his only work experience is his employment at the LIRR. (Pl. Dep. at 8, 36-39). Until he accepted his current position as Car Appearance Maintainer, Mr. McCormack's employment history had been limited to two positions in the track department, Track Worker and Machine Operator. (Pl. Dep. at 38).

---

[3] The EEOC also lists more general factors that should be considered when determining whether a plaintiff is substantially limited in any major life activity:

> (i) The nature and severity of the impairment;
>
> (ii) The duration or expected duration of the impairment; and
>
> (iii) The permanent or long-term impact, or the expected permanent or long-term impact of or resulting from the impairment.

29 C.F.R. § 1630.2(j)(2).

As a result of Mr. McCormack's seizures, he has been disqualified from working in a safety-sensitive environment, working at heights, or working alone. The plaintiff argues that many positions at the LIRR and elsewhere are unavailable to him, including work with electrical currents (including electrician or track worker), work at heights (including construction worker, painter, roofer, or scaffolding worker), and work in solitude (including ticket agent, security guard, and flagsman). (Pl. Memo. at 14). The evidence in the record supports the plaintiff's contentions. (Def. 56.1 Statement, ¶ 20 (plaintiff can do no work around tracks or live third rail, no climbing on equipment, no working alone); Tremaroli Letter (plaintiff not qualified to perform safety-sensitive or solitary work); Maieli 4/24/02 Letter (no safety sensitive work and no work with machines, with equipment, or in potentially dangerous situations); Maieli 6/14/05 Dep. at 22 (no work alone, around "live" equipment, at heights, or along the "right-of-way")). Mr. McCormack has been barred from holding the only two positions he has held during his entire employment history, as well as all safety-sensitive positions, work near live tracks, and work with machines. The plaintiff need not be disqualified from every position he could otherwise perform for his work limitation to be substantial. Bartlett, 226 F.3d at 83 (quoting Fjellestad v. Pizza Hut of America, 188 F.3d 944, 955 (8th Cir. 1999) ("'[T]he Act does not require a showing that absolutely no employment opportunities exist.'")). Accordingly, Mr. McCormack has made an ample showing that he has been disqualified from a

12

class of jobs.

The evidence in the record also indicates that Mr. McCormack may have been disqualified from a "broad range of jobs of various classes." The EEOC's Interpretive Guidance on Title I of the ADA, Appendix to Part 1630, explains that an individual who is excluded by a disability from a narrow range of activities may yet be considered substantially limited in the activity of working if that activity must be performed in several different jobs across a range of classes. As an example, the EEOC Guidelines describe "an individual [who] has an allergy to a substance found in most high rise office buildings, but seldom found elsewhere, that makes breathing extremely difficult." 29 C.F.R. Pt. 1630, App. § 1630.2(j). The person would be limited in the ability to perform the broad range of jobs in various classes that are conducted in "high rise office buildings." 29 C.F.R. Pt. 1630, App. § 1630.2(j). Similarly, Mr. McCormack's alleged disqualification from any employment in solitary conditions limits his "ability to perform the broad range of jobs in various classes" that are conducted in solitude.

The evidence in the record supports the contention that Mr. McCormack has been disqualified from a class of jobs and a broad range of jobs of various classes, and is therefore substantially limited in his ability to work. The LIRR argues that the plaintiff's seizure disorder does not substantially interfere with his ability to work because it is generally controlled through medication. (Def. 56.1 Statement, ¶ 4; Memorandum of Law in Support

13

of Defendant's Motion for Summary Judgment ("Def. Memo.") at 9-10). The defendant is correct that a "person whose physical or mental impairment is corrected by medication or other measures does not have an impairment that presently 'substantially limits' a major life activity." Sutton, 527 U.S. at 482-83. However, the degree to which Mr. McCormack's seizures are controlled, if at all, remains a disputed issue of fact. (Compare Pl. Dep. at 23, 30, 32 and Gold Aff., Exh. VII with Def. 56.1 Statement, ¶ 28 and Lundin Aff., Exh. O). Summary judgment on this issue must therefore be denied.

### 2. Record of a Disability

Even where an individual does not have a disability at the time of his employer's alleged discriminatory action, he may be considered disabled under the ADA if he "has a record of" a disability. 42 U.S.C. § 12102(2)(B); School Board of Nassau County v. Arline, 480 U.S. 273, 281 (1987). Congress intended this provision to protect individuals from discrimination due to medical history. See 29 C.F.R. Pt. 1630, App. § 1630.2(k). Mr. McCormack alleges in the alternative that he no longer experiences seizures because he takes medication, but that the LIRR discriminated against him on the basis of his medical history. As discussed in the previous section of this opinion, the plaintiff has submitted ample evidence of his alcoholism and epilepsy, as well as evidence of the substantial limitations they have placed on his ability to work. The vast majority of this evidence was taken from the records of the defendant, and the LIRR does not deny that it

14

removed Mr. McCormack from his position as a Track Worker on the basis of his history of seizures. The plaintiff has raised a triable issue of fact as to whether he qualifies as disabled by virtue of having a record of a disability.

### 3. Regarded As Having a Disability

Finally, the plaintiff alleges that he is disabled under the ADA because he is regarded as having a disability within the meaning of 42 U.S.C. § 12102(2)(C). Congress intended this provision of the ADA to protect individuals discriminated against because of the myths, fears, and stereotypes that are associated with disabilities. Arline, 480 U.S. at 284, 287. This claim "turns on the [defendant's] perception of" the plaintiff. Francis v. City of Meriden, 129 F.3d 281, 284 (2d Cir. 1997). It is a "question of intent [and] not [dependent on] whether the [plaintiff actually] has a disability." Id.

The claim of being regarded as disabled may be based on one of two sets of facts: either the defendant mistakenly believes that the plaintiff has an impairment that substantially limits a major life activity, or the defendant mistakenly believes that the plaintiff's actual, non-limiting impairment substantially limits a major life activity. 29 C.F.R. § 1630.2(l); Sutton, 527 U.S. at 489. In either case, "the plaintiff must show that the [defendant] regarded [him] as disabled within the meaning of the ADA," which includes regarding him as substantially limited in a major life activity. Colwell, 158 F.3d at 646 (emphasis omitted).

Mr. McCormack alleges that the LIRR mistakenly believes that

15

his actual, non-limiting impairments of alcoholism and epilepsy substantially limit his ability to work. As discussed above, the LIRR's perceptions of Mr. McCormack's limitations are well-documented. The LIRR views Mr. McCormack as suffering from a "medical condition . . . that requires long-term medication, possibly life-long, for control of symptoms[.]" (Maieli 4/24/02 Letter). Representatives of the LIRR have also stated that Mr. McCormack's condition renders him unable to fill either the position of Track Worker (Maieli 1/11/02 Letter), or any other position involving a safety-sensitive environment (Tremaroli Letter; Maieli 4/24/02 Letter); potentially dangerous situations (Maieli 4/24/02 Letter); heights (Maieli 6/14/05 Dep. at 22); solitude (Def. 56.1 Statement, ¶ 20; Tremaroli Letter; Maieli 6/14/05 Dep. at 22); or proximity to machines, electricity, or equipment (Def. 56.1 Statement, ¶ 20; Maieli 4/24/02 Letter; Maieli 6/14/05 Dep. at 22).

According to correspondence from the LIRR, "[t]he type of work Mr. McCormack is medically eligible for is that of a Sedentary to Light Duty position working in close proximity to co-workers." (Maieli 4/24/02 Letter). This is not a case in which an employer has found an employee disqualified from only certain limited positions. See Sutton, 527 U.S. at 492-93 (airline did not regard myopic employees as disabled where impaired vision made them unable to serve as global airline pilots but still eligible for regional pilot and pilot instructor positions); Murphy v. United Parcel Service, 527 U.S. 516, 524-25 (1999) (employer did not regard

16

mechanic as disabled where high blood pressure disqualified him from position that required driving commercial vehicle but he was understood to be "generally employable as a mechanic"); EEOC v. J.B. Hunt Transport, Inc., 321 F.3d 69, 75-76 (2d Cir. 2003) (plaintiffs not regarded as disabled where they were excluded from "driving freight-carrying tractor-trailer trucks over long distances for extended periods of time" but not from "other types of truck driving[,]" nor from other "safety-sensitive work," and there was "[in]sufficient evidence to support a finding that [employer] viewed the driving limitation as extending beyond [the defendant]"); Giordano v. City of New York, 274 F.3d 740, 748-50 (2d Cir. 2001) (police department did not regard officer as disabled where his potential to bleed excessively disqualified him from patrol duty positions but no evidence that defendant viewed him as disqualified from positions of full duty non-patrol police officer, security guard, or private investigator); see also Siederbaum v. City of New York, 309 F. Supp.2d 618, 625-27 (S.D.N.Y. 2004) (collecting cases). Indeed, the defendant alleges that for twenty months after referring the plaintiff to its Disabled Accident/ Disabled Sick Committee (Def. Statement 56.1, ¶ 11), it made diligent efforts to locate a position for him in all of the various departments of the LIRR, but, because of the severe limitations on his abilities, the defendant could not find a single job Mr. McCormack could perform. (Maieli 6/14/05 Dep. at 25-29).[4]

---

[4] In June 2003, the LIRR offered Mr. McCormack a position as an Oil Laborer, with limitations (Pl. Exh. IX), but then, according to the plaintiff, it retracted the offer, presumably because it

Mr. McCormack has thus presented a triable issue of fact as to whether the LIRR acted upon a mistaken belief that his alcoholism and epilepsy -- which, according to the plaintiff, are under control -- require greater restrictions on his ability to work than they actually do.

D. Limitations on the Plaintiff's Ability to Care for Himself

The plaintiff also claims that his alcoholism substantially limits his ability to engage in the major life activity of caring for himself.[5] Major life activities are those "that are of central importance to daily life." Toyota Motor Manufacturing, Kentucky, Inc. v. Williams, 534 U.S. 184, 197 (2002). The EEOC has listed "caring for oneself" as a major life activity, 28 C.F.R. § 41.31(b)(2), and the Second Circuit has defined it as "encompas[sing] normal activities of daily living[,] including feeding oneself, driving, grooming, and cleaning home." RECAP, 294 F.3d at 47 (citing Ryan v. Grae & Rybicki, P.C., 135 F.3d 867, 871 (2d Cir. 1998) (internal quotation marks omitted).

The plaintiff argues that, because of his alcoholism, he must reside with his parents, while the average adult can live independently. (Pl. Memo. at 12-13). He cites RECAP, a case in

---

determined that his impairments limited his ability to perform the position. (Pl. Memo. at 20). Although it did eventually offer Mr. McCormack as position as a CAM, this was only with the same restrictions as the illusive Oil Laborer position. (Pl. Exh. X).

[5] The plaintiff asserts neither that he has a record of being substantially limited in his ability to care for himself, nor that he is regarded as being so limited. See 42 U.S.C. § 12101(2)(B), (C).

which the Second Circuit held that alcoholic residents of a halfway house, who were unable "to live independently and to live with their families . . . without suffering a relapse," were substantially limited in the activity of caring for themselves. 294 F.3d at 47 (quotation omitted). However, the record in this case does not support the contention that Mr. McCormack is limited in the ability to care for himself. In RECAP, the court emphasized that "RECAP's clients qualify to live in [RECAP facilities] because they need its supportive environment," and were admitted only because they met stringent state-regulated admission criteria requiring residents to demonstrate an inability to maintain abstinence outside the supportive environment. Id. at 47. Although Mr. McCormack may suffer from alcoholism, he does not live in a facility for recovering alcoholics; he lives with his family. (Pl. Dep. at 6). The plaintiff's attorney baldly asserts that this arrangement is necessary for the plaintiff to maintain abstinence but has offered no explanation of this theory nor submitted any medical or testimonial evidence.

"[T]o defeat a motion for summary judgment a plaintiff cannot rely on 'conjecture or surmise.'" Heilweil v. Mount Sinai Hospital, 32 F.3d 718, 723 (2d Cir. 1994) (quoting Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991)). Given that Mr. McCormack admitted in his deposition that he is able to care for himself (Pl. Dep. at 6, 7), and no evidence in the record suggests otherwise, summary judgment must be granted for the defendant on the issue of whether the plaintiff is substantially limited in the life activity of

caring for himself. See Sussle v. Sirina Protection Systems Corp., 269 F. Supp. 2d 285, 302 (S.D.N.Y. 2003) (plaintiff must present evidence of substantial limitation to survive summary judgment).

Conclusion

Summary judgment is granted to the defendant with respect to the plaintiff's claim that he is substantially limited in the major life activity of caring for himself. Summary judgment with respect to all other issues is denied. By March 31, 2006, counsel shall submit a joint pretrial order, proposed voir dire questions, requested jury instructions, and any motions in limine.

SO ORDERED.

*James C. Francis IV*
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated:   New York, New York
         February 28, 2006

Copies mailed this date:

Fredric M. Gold, Esq.
Sable & Gold
450 Seventh Avenue
New York, New York  10123

Priscilla Lundin, Esq.
Brian K. Saltz, Esq.
Stephen N. Papandon, Esq.
LIRR Law Department - 1143
Jamaica Station
Jamaica, New York  11435

20